IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TAMMY LYNN JOHNSON | ) | |
| | ) | |
| v. | ) | No. 3:17-0719 |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION[1] | ) | |

To: The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's amended motion for judgment on the administrative record. *See* Docket Entry ("DE") 15.[2] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplement Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") at 20-38).[3] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 4.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*. Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

[2] Plaintiff filed the amended motion following a deficiency in her initial motion's certificate of service. *See* DE 14. The original motion (DE 14) is therefore DENIED as moot.

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

Upon review of the administrative record and consideration of the parties' filings, I find no error that would necessitate remand in this case and therefore recommend that Plaintiff's motion for judgment on the administrative record (DE 15) be **DENIED.**

I.     **FACTS AND PROCEDURAL HISTORY**

Plaintiff protectively filed an application for DIB and SSI on August 19, 2013 due to a fractured talus bone, necrosis and a collapsed bone, depression, anxiety, Hepatitis C, polycystic ovarian syndrome, and neuropathy, with an alleged disability onset date of April 1, 2013. (Tr. 94-95, 140). Her application was denied initially and upon reconsideration. (Tr. 94-95, 132-33). Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ David A. Ettinger on September 10, 2015. (Tr. 44). On February 23, 2016, the ALJ denied the claim. (Tr. 20-22). On February 15, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision; therefore, the ALJ's decision stands as the final determination of the Commissioner. (Tr. 1-3).

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right ankle avascular necrosis, peripheral vascular disease, peripheral neuropathy, obesity, depressive disorder, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR

404.1567(a) and 416.967(a) except that she cannot stand or walk for more than one hour during a work day; cannot more than occasionally operate foot controls with her right leg; cannot climb ladders; cannot more than occasionally climb stairs or crawl; cannot more than frequently balance, stoop, kneel, or crouch; must avoid concentrated exposure to extreme cold, respiratory irritants, and hazardous work environments; is limited to simple repetitive work; cannot maintain attention or concentration for longer than two hours without interruption; cannot interact with the public; and cannot more than occasionally interact with supervisors and coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 18, 1974 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-38).

On appeal, Plaintiff submits two assertions of error: (1) that the ALJ failed to properly consider the opinion of a treating source; and (2) that the residual functional capacity ("RFC") determination is not supported by substantial evidence. DE 15-1 at 11. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 19.

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step

4

four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id.* §§ 404.1520(a), 416.920(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial

evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

**B. The Commissioner's Decision**

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform sedentary with express limitations to account for her severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 25-38).

**C. Assertions of Error**

**1. The opinion of the treating physician.**

Plaintiff first asserts that the ALJ erred by violating a provision in the regulations known commonly as the "treating physician rule."[4] Under this provision, the ALJ must accord controlling weight to the opinion of a treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if the opinion is not given controlling the weight, the ALJ must consider the amount of weight to accord it. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751 (6th Cir. 2011)

---

[4] The treating physician rule applies to all Social Security claims filed before March 27, 2017, such as the instant one, but the rule is no longer in effect.

(quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010)). The ALJ's explanation for such weight allocation "must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and reasons for that weight." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec. Admin.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

Dr. Steven Larson, an orthopedist who treated Plaintiff's ankle condition on five separate occasions, completed an RFC questionnaire on October 10, 2013 in which he diagnosed with Plaintiff with a "fracture tarsal, nonunion avascular necrosis, and posttraumatic arthritis." (Tr. 340).[5] Dr. Larson opined that these conditions prevented Plaintiff from being able to sit for more than one hour at a time or stand and walk for more than five minutes at a time, but also found that Plaintiff was able to sit for the entirety of an eight-hour workday and stand and walk for one hour per workday. (Tr. 340). Dr. Larson included several severe functional limitations in the questionnaire: Plaintiff's condition would "often" interfere with her attention and concentration; she would need to recline or lie down multiple times during an eight-hour workday; she would require a 15-minute break every hour of the workday; she would require a job that permits her to alternate at will between sitting, standing, and walking; she would likely be absent from work more than four times per month; and she cannot lift or carry any amount of weight. (Tr. 340-41).

In granting this opinion "partial" weight, the ALJ accepted Dr. Larson's conclusions regarding the amount of time Plaintiff could sit, stand, and walk during a workday, but granted little weight to the remainder of the questionnaire. (Tr. 31). The ALJ provided the following explanation for rejecting the additional restrictions: "Dr. Larson failed to support such

---

[5] Plaintiff acknowledges in her brief that all of her medical records instead identify her condition as a fractured *talus*, though she asks the Court to assume that Dr. Larson "mistakenly wrote *tarsal*." DE 15-1 at 9, n.1 (emphasis added).

restrictions with reference to any abnormal medical findings or otherwise meaningfully explain the connection between such extreme limitations and the claimant's impairments." (Tr. 31). Plaintiff argues that this explanation is insufficient to fulfill the requirements of the treating physician rule because it focuses solely on the supportability of Dr. Larson's opinion and disregards the other applicable factors contained in 20 C.F.R. § 404.1527(c). DE 15-1 at 16-17.

As an initial matter, the Sixth Circuit has held that even a single reason rejection of a treating source opinion can be sufficient if it "reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source[.]" *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). The ALJ's explanation in the instant case directly addresses at least the supportability and consistency of Dr. Larson's opinion, both of which are obligatory considerations when determining the amount of weight to give to a treating physician's conclusions. *See* 20 C.F.R. § 404.1527(c)(3)-(4). The emphasis on Dr. Larson's failure to explain the correlation between Plaintiff's ankle impairment and other severe restrictions in the questionnaire, including her purported inability to lift any amount of weight (*see* Tr. 341), also arguably goes to the ALJ's consideration of any "other factors ... which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(6).

Plaintiff nonetheless points to multiple imaging studies that demonstrate the presence of a talus fracture and avascular necrosis in her right foot, including an x-ray taken on June 25, 2013 that revealed a "nonunion [fracture] site" that showed "no sign of healing." (Tr. 352, 373-74, 490). Such evidence does not, however, refute the ALJ's finding that Dr. Larson failed to establish a causal relationship between Plaintiff's condition and all of the limitations contained in the questionnaire. *See Carroll v. Comm'r of Soc. Sec.*, No. 2:09-cv-14037, 2011 WL 4576007, at *9 (E.D. Mich. Aug. 5, 2011), *report and recommendation adopted,* 2011 WL 4532286 (E.D.

Mich. Sept. 30, 2011) (noting that 20 C.F.R. § 404.1527(c)(3) requires the ALJ to consider "the evidence presented by a treating physician to support his opinion"). Nor does the existence of a talus fracture and avascular necrosis in Plaintiff's foot explain why she would be unable to lift any amount of weight (Tr. 341), a finding that is particularly questionable in light of Plaintiff's own testimony that she could "comfortably" lift and carry 10 pounds. (Tr. 55). Such evidence is critical to the Court's analysis since "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).

The questionnaire instead merely identifies Plaintiff's symptoms as "pain, swelling, unable to walk," the latter of which is contradicted by Dr. Larson's own finding that Plaintiff can "stand/walk" for one hour per eight-hour workday, as well as Plaintiff's statements that she cooks, cleans, does laundry, takes out the trash, and plays games with her grandchildren. (Tr. 53, 340, 417). Plaintiff nonetheless claims that Dr. Larson's identification of "swelling" as a symptom is a sufficient basis to support his opinion that she would require a position that allowed her to shift between standing, sitting, and walking at will. DE 15-1 at 15. Plaintiff's brief references an online article that describes the impact of swelling on an individual's foot, leg, and ankle, as well as recommended ways of treating this condition. *Id*. But Plaintiff's *post hoc* attempt to bootstrap the conclusions contained in the questionnaire cannot rescue it from Dr. Larson's failure to explain the basis for his opinions, a shortcoming that weighs against this assertion of error. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation *a source provides* for a medical opinion, the more weight we will give that medical opinion.") (emphasis added). The record also suggests that any swelling experienced by Plaintiff has been intermittent, as she reported no swelling at all in approximately half of her visits with Dr. Larson, including during

their penultimate encounter. (*See* Tr. 350, 357, 376, 383). Dr. Larson's perfunctory reference to "swelling" does little to support the restrictions recommended in the questionnaire. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:16-cv-236, 2016 WL 7009784, at *5 (W.D. Mich. Dec. 1, 2016) (affirming ALJ's decision to accord little weight to a treating physician's "checkbox worksheet" opinion that failed to "provide a logical bridge between objective treatment records and the reported limitations").

Furthermore, and crucially, the ALJ discussed the inconsistency of Plaintiff's allegation that she was forced to quit her job in April of 2013 because of the severity of her foot condition in light of her subsequent application for and receipt of unemployment benefits. (Tr. 36, 50, 63, 222). The Sixth Circuit has noted that applications for both unemployment and disability benefits are "inherently inconsistent" as there "is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004) (internal citations and quotations omitted). The record in the instant matter indicates that Plaintiff applied for jobs after her alleged onset date and continued receiving unemployment benefits at least through December of 2013 (Tr. 62-63, 412), approximately two months *after* the questionnaire was completed, which both rebuts Dr. Larson's opinion that Plaintiff would not be "capable of working an 8 hour day, 5 days a week employment on a sustained basis" (Tr. 341), and suggests the absence of a disabling condition. *See Villarreal v. Comm'r of Soc. Sec.*, No. 2:13-cv-15197, 2014 WL 6750327, at *7 (E.D. Mich. Nov. 30, 2014) (noting that the claimant's applications for jobs and unemployment benefits after the alleged onset date were "obviously not consistent with his allegations of disabling pain").

Plaintiff's claim that the ALJ erred by referencing only one factor, supportability (DE 15-1 at 14), understates the extent of the ALJ's analysis. In discussing the severity of the alleged impairments, the ALJ explained that Plaintiff was able to largely ambulate without significant difficulty, noting that Plaintiff's use of assistive walking aids was minimal. (Tr. 26). The ALJ also discussed Plaintiff's "mild restriction" with respect to her activities of daily living, which included performance of household chores, driving, grocery shopping, and caring for her grandchildren. (Tr. 27). Moreover, as noted *supra*, the ALJ discussed the relatively mild physical findings derived from examinations of Plaintiff. (Tr. 30). Such discussion adequately challenges the validity of the restrictions contained in Dr. Larson's questionnaire "in an indirect but clear way," which the Sixth Circuit has found to represent substantial evidence. *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010). Furthermore, the ALJ did not reject Dr. Larson's opinion outright, instead granting the opinion "partial weight" and adopting and incorporating into the RFC the limitations in the questionnaire relating to Plaintiff's ability to sit, stand, and walk, which was within his purview. *Cf. Warner v. Comm'r of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004) (holding that it was "significant that the [ALJ] did not reject wholesale the conclusions" of the treating physician, and emphasizing that the ALJ may reject all or a portion of a treating source's findings).

As long as the ALJ's determination is supported by substantial evidence, reversal is not warranted even if substantial evidence might support an opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005)). The ALJ in this case highlighted Dr. Larson's failure to provide any explanation or identify any medical findings to support the severity of the limitations contained in the questionnaire, which was entirely appropriate. Significantly, the ALJ also discussed the

relatively mild findings related to Plaintiff's ankle condition that were documented during multiple encounters, including the "well preserved" ankle joint space exhibited in x-rays, as well as the normal findings derived from physical examinations, which documented normal joint stability, range of motion, and motor strength. (Tr. 30, 31, 424, 447). The ALJ thus, at a minimum, "implicitly provided sufficient reasons" for giving only partial weight to Dr. Larson's questionnaire. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (noting that the ALJ "adequately addressed [the treating physicians'] opinions by indirectly attacking both the consistency of those opinions with the other record evidence and their supportability"). The ALJ also reasonably accommodated Plaintiff's foot impairment by limiting her to sedentary work with additional functional limitations. (Tr. 29). The undersigned therefore finds no error in the ALJ's analysis.

   2. **The RFC.**

Plaintiff next contends that the ALJ "failed to reconcile" the mental restrictions recommended by Dr. Lorraine Greene, who performed a psychological evaluation of Plaintiff in November of 2015, with the restrictions that were ultimately incorporated into the RFC. DE 15-1 at 17. As part of her evaluation, Dr. Greene opined that Plaintiff had mild impairment in her ability to appropriately interact with the public and with coworkers, and moderate impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 519). The ALJ accorded Dr. Greene's opinion "great weight" in light of its general consistency with her examination findings, the findings from Plaintiff's previous consultative examination, and Plaintiff's standardized test scores. (Tr. 34). Plaintiff alleges, however, that the ALJ erred by failing to incorporate all of Dr. Greene's restrictions into the RFC despite according the opinion great weight.

After the ALJ determined that Plaintiff had severe impairments preventing her from being able to perform any past work, the burden shifted to the Commissioner to establish that there were a significant number of jobs that Plaintiff could still perform in light of her RFC. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In order to meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Id.* (quoting *O'Banner v. Sec'y of Health, Education & Welfare,* 587 F.2d 321, 323 (6th Cir. 1978)). The Commissioner may procure substantial evidence to support such a finding by relying on testimony from a vocational expert in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Id*. (internal citations omitted).

During the administrative hearing, the ALJ asked a vocational expert whether there were jobs that could be performed by a hypothetical claimant with an RFC that included a limitation of simple, repetitive work, an inability to maintain attention or concentration for more than two hours without interruption, and an inability to interact with supervisors or coworkers more than occasionally. (Tr. 65). The vocational expert testified that such a hypothetical claimant would be able to perform jobs as an assembler, a film touch-up inspector, and a cuff folder. (Tr. 66-67). The ALJ subsequently adopted these limitations as part of the assigned RFC. (Tr. 29). Absent from the hypothetical, however, was Dr. Greene's identified limitation pertaining to Plaintiff's "moderate" difficulty in responding appropriately to usual work situations and changes in a routine work setting, which, according to Plaintiff, represents an error necessitating remand.

Despite this contention, the Court finds no basis on which to reverse the ALJ's decision. For one, there is no indication that the "moderate" limitations identified by Plaintiff would prevent her from performing the positions identified by the vocational expert. The Sixth Circuit

has held that such a circumstance renders harmless an ALJ's failure to incorporate all of the limitations from an opinion that was accorded great weight into a hypothetical. *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) (ALJ's failure to include moderate limitations in the claimant's ability to respond appropriately to changes in the work setting was harmless error based on lack of evidence suggesting that such a limitation would have impacted the ability of the claimant to perform the duties of multiple sedentary jobs identified by the vocational expert). Plaintiff asserts broadly that "it is impossible ...to know" whether these two moderate limitations would affect her ability to perform sedentary work (DE 15-1 at 19), yet such vagueness is insufficient to establish the existence of a *reversible* error. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635-36 (6th Cir. 2016) ("Because [the claimant] has not shown that more precise wording in the hypothetical would have resulted in a finding of disability, the ALJ's error was immaterial and harmless.").

Plaintiff also cites Sixth Circuit precedent to argue that the ALJ failed to elicit testimony in response to hypothetical that accurately reflected her condition. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010). In *Ealy*, the ALJ accorded "great weight" to the opinion of a non-examining State agency physician who concluded that the subject claimant could "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical[.]" *Id*. at 509. The Sixth Circuit concluded that the ALJ committed reversible error by failing to include this additional restriction in the hypothetical that was posed to the vocational expert, which merely limited claimant to "simple, repetitive tasks and instructions in non-public work settings." *Id*. at 510, 516. In contrast, Dr. Greene's opinion included no such specific limitation, as her RFC assessment instead contains only a checked box

on a form indicating that Plaintiff is "moderately" deficient in her ability to respond appropriately to work situations and changes in routine. (Tr. 519).

Additionally, the Sixth Circuit has explicitly held that a moderate limitation in a claimant's ability to respond to changes at work, as opposed to the moderate limitation with respect to concentration, persistence, and pace involved in *Ealy*, was adequately reflected by a hypothetical that limited the claimant to routine and repetitive work. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (noting that an opinion accorded "great weight" by the ALJ did not contain "concrete limitations as to the particular type of changes with which [the claimant] has difficulty"). The hypothetical question at issue in this case similarly included a limitation to "simple repetitive work" (Tr. 29), a restriction that the Sixth Circuit found to represent a sufficient portrayal of a claimant who is moderately impaired in her ability to respond to work changes. *Id.* (noting that a "functional limitation to routine and repetitive tasks, and to limited interaction with the general public, provides structure and monotony so as to reduce work changes to which [the claimant] would have to respond"). The undersigned therefore finds that the ALJ posed a hypothetical that correctly depicted Plaintiff's mental impairments, as was his charge. *See Brock*, 368 F. App'x at 626 ("While the hypothetical question could have contained more restrictions, it contained an accurate portrayal of [the claimant's] mental limitations.")

Although a hypothetical question must accurately describe the functional limitations caused by a claimant's condition, there is no requirement that the hypothetical "match the language of the RFC verbatim." *Kepke*, 636 F. App'x at 635 (6th Cir. 2016). Plaintiff faults the ALJ for failing to include a single segment of Dr. Greene's RFC, yet points to no evidence suggesting that inclusion of this relatively mild functional limitation in the hypothetical would

15

have changed the outcome of her case. *See Sims*, 406 F. App'x 977, at 980 (noting that a "moderate" limitation in social functioning is a "non-disabling" condition). The undersigned therefore concludes that the ALJ presented a hypothetical to the vocational expert that adequately captured Plaintiff's impairments with respect to her ability to respond appropriately to usual work situations and changes in the work setting. The absence of this moderate limitation in the hypothetical therefore fails to rise to the level of reversible error, thus requiring rejection of Plaintiff's assertion of error.

### III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 15) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge