# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TAMMY LYNN JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 3:17-cv-00719<br>Judge Aleta A. Trauger |

## MEMORANDUM

On April 13, 2018, the Magistrate Judge issued a Report and Recommendation ("R&R") (Doc. No. 18), recommending that the plaintiff's Amended Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 15) be denied and the Social Security Administration's ("SSA") denial of benefits be affirmed. The plaintiff, Tammy Lynn Johnson, has filed timely Objections (Doc. No. 20), to which the SSA has responded (Doc. No. 21). For the reasons discussed herein, the court will overrule the Objections, accept the R&R, and dismiss this action.

## BACKGROUND[1]

On August 19, 2013, the plaintiff filed an application for disability insurance benefits ("DIB") and social security income ("SSI") due to a fractured talus bone, necrosis, a collapsed bone, depression, anxiety, Hepatitis C, polycystic ovarian syndrome, and neuropathy. (Doc. No. 12 (hereinafter "AR") 94-95, 140.) Her application was denied initially and upon reconsideration. (AR 94-95, 132-33.) The plaintiff subsequently requested and received a hearing before an Administrative Law Judge ("ALJ"). (AR 44.) On February 23, 2016, the ALJ denied the

---

[1] The background is taken from the R&R, familiarity with which is presumed.

1

plaintiff's application. (AR 20-22.) As the Magistrate Judge summarized, the ALJ's decision contained the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 13, 2017.

2. The claimant has not engaged in substantial gainful activity since April 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right ankle avascular necrosis, peripheral vascular disease, peripheral neuropathy, obesity, depressive disorder, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she cannot stand or walk for more than one hour during a work day; cannot more than occasionally operate foot controls with her right leg; cannot climb ladders; cannot more than occasionally climb stairs or crawl; cannot more than frequently balance, stoop, kneel, or crouch; must avoid concentrated exposure to extreme cold, respiratory irritants, and hazardous work environments; is limited to simple repetitive work; cannot maintain attention or concentration for longer than two hours without interruption; cannot interact with the public; and cannot more than occasionally interact with supervisors and coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 18, 1974 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 25-38.)

On February 15, 2017, the Appeals Council issued a letter declining to review the case, thereby rendering the ALJ's decision as the Commissioner's final decision. (AR 1-3.)

On April 18, 2017, the plaintiff filed this action under 42 U.S.C. § 405(g) and 1383(c)(3) to obtain judicial review of the Social Security Commissioner's denial of her application for DIB or SSI. (Doc. No. 1.) On August 1, 2017, she filed an Amended Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 15), which the SSA opposed (Doc. No. 16).

On April 13, 2018, the Magistrate Judge issued the R&R, which recommended that the plaintiff's motion be denied and the SSA's decision be affirmed. (Doc. No. 18.) The plaintiff filed timely objections (Doc. No. 20), and the SSA filed a response (Doc. No. 21).

## **STANDARD OF REVIEW**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. §§

1383(c), 405(h). Review of an ALJ's decision, if any, is limited to whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016); *see* 42 U.S.C. § 405 (g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). The substantial evidence standard also "'presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, if substantial evidence supports an ALJ's decision, the court defers to that finding, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## ANALYSIS

**1. Dr. Larson's Opinion**

The plaintiff objects to the Magistrate Judge's finding that the ALJ properly considered the opinion of Dr. Steven Larson, her treating orthopedist, according to the treating physician rule. Under the treating physician rule,[2] the ALJ is required to give controlling weight to a treating physician's opinion provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ does not give controlling

---

[2] As the Magistrate Judge noted, the treating physician rule applies to all Social Security claims filed before March 27, 2017, including the current claim, but currently the rule is not in effect. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

4

weight to a treating source's opinion, the ALJ must: (1) clarify whether a treating source's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with the other substantial evidence in the case record, identifying the evidence supporting such a finding; and (2) explain his application of the factors listed in the regulations to determine the weight to give to a treating physician's opinion. *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012). The factors are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ must always give "good reasons" for the weight he gives to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (citation and internal quotation marks omitted). However, there is no *per se* rule that requires a written articulation of each of the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ first considered the medical evidence of the plaintiff's ankle pain. (AR 30.) The ALJ then described Dr. Larson's opinion from his October 2013 Residual Functional Capacity Questionnaire. (AR 31.) Next, the ALJ discussed the weight he accorded Dr. Larson's opinion as follows:

> I accord Dr. Larson's opinion statement partial weight. Specifically, his opinion that the claimant cannot stand or walk for more than one hour but can sit for up to eight hours during a typical 8-hour workday is consistent with his treatment recommendations and the objective clinical and radiographic findings of record . . . However, his opinions that the claimant would be unable to sustain the concentration necessary to perform simple work, would need to lie down or elevate her legs during the workday, must be permitted to alternate between sitting and standing at will, would need an unscheduled rest break every hour, can never lift anything, would be absent from work more than four days each month, and could not sustain any fulltime work are given little weight. Dr. Larson failed to support such restrictions with reference to any abnormal medical findings or otherwise meaningfully explain the connection between such extreme limitations and the claimant's impairments.

(AR 31.)

The plaintiff argues that the ALJ's explanation is insufficient to fulfill the treating physician rule's requirements. The court disagrees. The ALJ satisfied the first prong of the treating physician rule because he clarified that medical evidence did not support Dr. Larson's opinion. Although Dr. Larson's medical examination notes diagnose the plaintiff's impairments and discuss symptoms of pain and swelling and that the plaintiff is unable to walk (*see* AR 340-397), the notes do not explain how the plaintiff's symptoms would support the extreme limitations Dr. Larson opines.[3]

The ALJ also satisfied the rule's second prong because his explanation, albeit brief, discusses the supportability and consistency of Dr. Larson's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4); 416.927(c)(3)-(4). Furthermore, the ALJ's explanation is similar to those this court and another in this district have held satisfies the treating physician rule. For example, in *Perryman v. Colvin*, No. 3:15-00604, 2016 WL 4993384, at *3 (M.D. Tenn. Sept. 19, 2016), *report*

---

[3] The court further notes that Dr. Larson's symptom identification that the plaintiff is unable to walk is contradicted by his own assessment that the plaintiff can "stand/walk" for one hour per eight-hour workday. (AR 340.)

6

*and recommendation adopted sub nom. Perryman v. Soc. Sec. Admin.*, No. 3:15-CV-00604, 2017 WL 119544 (M.D. Tenn. Jan. 11, 2017) (Trauger, J.), the ALJ gave a treating doctor's opinion little weight because the doctor, *inter alia*, "did not include any medical or clinical findings to support his assessment." The court found this reason alone sufficient under the treating physician rule. *See id.* at *4. Similarly, in *Haywood v. Colvin*, No. 2:14-CV-00092, 2016 WL 2893261, at *2 (M.D. Tenn. May 18, 2016), the ALJ gave no weight to a treating doctor's opinion that the plaintiff was likely to be absent from work two days a month because the doctor's treatment notes did not state that the plaintiff reported experiencing severe pain during that time, nor did she visit medical offices two days a month. The court found the ALJ's evaluation sufficient because the ALJ "gave a good reason for failing to accord this particular part of the opinion controlling weight—it was specifically contradicted by Dr. Carlson's treatment notes from the relevant time period." *Id.*

In addition to the explicit reasons the ALJ provided, he mentioned that medical evidence establishes that the plaintiff is fully ambulatory without using a boot or brace to walk (AR 26), and that the plaintiff can perform light household chores, drive regularly to the grocery store, and take care of her grandbaby. (AR 27.) The ALJ also noted the inconsistency between the plaintiff's application for disability benefits and receipt of unemployment benefits, which require her to certify that she was willing and able to engage in work activity. (AR 36.) Therefore, the ALJ implicitly provided additional reasons for giving only partial weight to Dr. Larson's opinion. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006) (holding that the ALJ "adequately addressed the [threating physicians' opinions] by indirectly attacking both the supportability of those opinions and the consistency of those opinions with the record as a whole").

7

The plaintiff points to MRIs, X-rays, and a CT scan, which confirm necrosis of her talar bone. (AR 352, 372, 374, 391, 490.) However, the mere diagnosis of the plaintiff's condition does not refute the ALJ's assessment. "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of [the condition]." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). As the Magistrate Judge aptly concluded, the imaging studies the plaintiff discusses do not address the ALJ's finding that Dr. Larson failed to explain how the plaintiff's condition causes the limitations in his RFC opinion. The plaintiff also argues that Dr. Larson's identification of swelling as one of her symptoms supports his opinion that she would need to lie down or elevate her legs during the workday and must be permitted to alternate between sitting and standing at will. This argument does not persuade the court. The plaintiff attempts to rationalize Dr. Larson's opinion, whereas Dr. Larson himself provides no reason for the limitations he opines.

In light of the foregoing, the court finds that the ALJ properly considered Dr. Larson's opinion and substantial evidence supports her conclusion that the plaintiff's ankle condition would not be disabling but would limit her to mostly sedentary work.

**II. Dr. Greene's Opinion and the RFC Determination**

The plaintiff also objects to the Magistrate Judge's finding that the ALJ did not commit reversible error when he failed to include the entirety of Dr. Lorraine Greene's opined limitations in the RFC determination and VE hypothetical. Dr. Greene performed a psychological evaluation of the plaintiff in November 2015. (AR 507-520.) Dr. Greene opined that, *inter alia*, the plaintiff had a moderate impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (AR 519.) The ALJ, however, failed to incorporate this restriction into the RFC determination and VE hypothetical.

8

The plaintiff, citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513, 516 (6th Cir. 2010), argues that the ALJ erred by failing to include all limitations in his hypothetical to the VE. In *Ealy*, the ALJ accorded great weight to a non-examining physician's opinion who concluded that the claimant could sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour workday where speed was not critical. *See id.* at 509-10. The Sixth Circuit held that the ALJ committed reversible error by failing to include this restriction related to speed, pace, and concentration in the hypothetical that was posed to the VE, that instead merely limited the claimant to simple, repetitive tasks and instructions in non-public work settings. *See id.* at 510, 516-17.

The court, however, finds the plaintiff's argument unavailing in light of *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014). In *Smith-Johnson*, the Sixth Circuit held that a hypothetical that limited the claimant to simple, routine, and repetitive work that avoided contact with the general public adequately reflected the doctor's opinion that the claimant had a moderate limitation in her ability to respond to changes at work and her need for a very low-stress environment. *Id.* at 436-37. Likewise, here, by limiting the plaintiff to simple and repetitive tasks and to no interaction with the general public and occasional interactions with coworkers, the ALJ provided an RFC that accommodated the claimant's moderate impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting. The RFC finding of simple and repetitive tasks with no interaction with the public and limited interaction with coworkers "provides structure and monotony so as to reduce work [situations and] changes to which [the plaintiff] would have to respond." *Id.* at 437. Accordingly, the ALJ did not commit

reversible error in regard to the limitations included in his RFC or VE hypothetical, and the court overrules the plaintiff's objection.[4]

## CONCLUSION

For the foregoing reasons, the court will overrule the plaintiff's Objections (Doc. No. 20); accept and adopt the Magistrate Judge's R&R in its totality (Doc. No. 18); deny the plaintiff's Amended Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 15); and affirm the SSA's decision.

An appropriate order will enter.

ENTER this 3rd day of July 2018.

ALETA A. TRAUGER
United States District Judge

---

[4] The plaintiff also argues that the ALJ erred by failing to make specific findings regarding her ability to respond to usual workplace situations and changes in a routine work setting and by failing to explain why he did not adopt all of the limitations in Dr. Greene's opinion. Because the Court finds that any alleged errors were harmless, the Court need not address the plaintiff's additional arguments.